IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE VERIZON EMPLOYEE | § | |
| BENEFITS COMMITTEE, | § | |
| | § | |
| Plaintiff- | § | |
| counterdefendant, | § | |
| | § | Civil Action No. 3:06-CV-0482-D |
| VS. | § | |
| | § | |
| SALLY FITZGERALD, | § | |
| | § | |
| Defendant- | § | |
| counterplaintiff. | § | |

MEMORANDUM OPINION
AND ORDER

This is an action under § 502(a)(3) of ERISA,[1] 29 U.S.C. § 1132(a)(3), by plaintiff-counterdefendant The Verizon Employee Benefits Committee ("VEBC"), the administrator of an ERISA employee pension plan ("Plan"), against defendant-counterplaintiff Sally Fitzgerald ("Fitzgerald"), a former employee of Verizon Communications, Inc., and/or its subsidiaries and predecessor corporations ("Verizon"), and Plan participant, to recover alleged overpayments of Plan benefits. Fitzgerald counterclaims against VEBC for alleged violations of ERISA. She moves under Fed. R. Civ. P. 12(c) for judgment on the pleadings, contending this action is barred by limitations. VEBC moves under Rules 12(b)(6) and 8(c) for partial dismissal of Fitzgerald's counterclaims and for re-designation of certain counterclaims as affirmative defenses. For

---

[1]Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

the reasons that follow, the court denies Fitzgerald's motion for judgment on the pleadings.  And, except for counterclaims that Fitzgerald concedes should be re-designated or dismissed, the court denies VEBC's motion to dismiss and to re-designate counterclaims.

I

Fitzgerald starting working for a Verizon predecessor company in 1962, and she remained employed until 1983.  Verizon rehired her in 1987, and she was employed until she retired in December 2001.  In May 2002 Fitzgerald received a Plan distribution in the amount of $408,018.62, plus interest.  In June 2002 she received a second distribution in the amount of $163,097.21, plus interest.  In July 2002 Fitzgerald received an third and final distribution in the amount of $170,573.76, plus interest, for a total of $741,689.59 in benefit payments, plus interest.

VEBC contends that after the distributions were made, it discovered that, due to an administrative error, it had significantly overpaid Fitzgerald.  It alleges that the final distribution in the amount of $170,573.76 was not reduced by the amount of the second distribution, as the Plan required.  VEBC asserts that Fitzgerald was only entitled to receive $585,827.33 under the Plan, but, due to the error, she was paid $155,862.26 more than she was entitled to receive.  According to VEBC, Bruce W. O'Neel ("O'Neel"), a Pension Department employee, wrote Fitzgerald, explained that she had been overpaid by $155,862.26 due to an

- 2 -

administrative error, and requested that she return the overpayment.  Fitzgerald refused, and VEBC filed this lawsuit. VEBC seeks equitable relief under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), and sues to enforce the terms of the Plan, arguing that Fitzgerald was only entitled to $585,827.33 in Plan benefits. VEBC seeks a constructive trust on the overpaid amount,[2] equitable restitution, interest, and attorney's fees.

Fitzgerald counterclaims, contending that VEBC is liable for breach of fiduciary duty.  She also alleges that she is entitled to credits or offsets against any amount that VEBC recovers in this case for funds that VEBC has already recouped (including amounts VEBC has already recovered by suspending her retiree medical subsidy), and any funds that she has paid in the form of taxes, fees, and losses based on the amount VEBC contends she erroneously received.

VEBC moves under Rules 12(b)(6) and 8(c) to dismiss and to re-designate counterclaims.  Fitzgerald moves under Rule 12(c) for judgment on the pleadings.

---

[2]VEBC also seeks restitution through a constructive trust and/or equitable lien on the specifically identifiable accounts, funds, or real property where those funds may be traced, if the funds have been transferred out of an individual retirement account.  And it requests a preliminary injunction prohibiting Fitzgerald from dissipating, transferring, pledging, spending, transferring, disposing, or encumbering the overpayment.  Because VEBC has not filed a separate application for injunctive relief, the court will not address this request.

II

Although Fitzgerald filed her motion for judgment on the pleadings after VEBC filed its motion, the court will decide her motion first, because she maintains that VEBC's action is entirely barred by limitations.

A Rule 12(c) motion for judgment on the pleadings is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts. *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (citing 5A Wright & Miller, *Federal Practice and Procedure* § 1367, at 509-10 (1990)). The motion should be granted only if there is no issue of material fact and if the pleadings show that the moving party is entitled to prevail as a matter of law. *Greenberg v. Gen. Mills Fin. Group, Inc.*, 478 F.2d 254, 256 (5th Cir. 1973). The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion under Rule 12(b)(6). *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) (Fitzwater, J.) (citing 5A Wright & Miller, *supra*, § 1368, at 591 (Supp. 2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion.") (footnote omitted)). "In analyzing the complaint, [the court] will accept all well-pleaded facts as true, viewing them in

- 4 -

the light most favorable to the plaintiff." *Id.* (citing *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996)).

Dismissal of an action brought under ERISA § 502(a)(3) may be appropriate "where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa*, 339 F.3d 359, 366 (5th Cir. 2003); *see also Kansa Reinsurance Co. v. Congressional Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366-70 (5th Cir. 1994) (affirming 12(b)(6) dismissal as time-barred when suit filed after limitations period had run and pleadings established plaintiff could not invoke the "discovery rule"). A limitations defense may be properly raised in a Rule 12(c) motion when the complaint affirmatively shows that the plaintiff's claims are time-barred. *See United States v. Bantau*, 907 F. Supp. 988, 990 (N.D. Tex. 1995) (Mahon, J.) (12(b)(6) motion) (citing *Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958)); *see also Doe v. Linam*, 225 F.Supp.2d 731, 734 (S.D. Tex. 2002).

"'[T]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'" *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (quoting 5A Wright & Miller, *supra*, § 1357, at 598 (1969)). "[D]ismissal of a claim on the basis of barebones pleadings is a 'precarious disposition with a high mortality rate.'" *Id.* (quoting *Barber v. Motor Vessel "Blue Cat,"* 372 F.2d

626, 627 (5th Cir. 1967)).  "The court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam) (Rule 12(c) decision) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Id.* (citing *Doe*, 81 F.3d at 1401).  "Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint."  *Id.* (citing *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996)).

III

Both parties recognize that § 502(a)(3) does not prescribe a limitations period, and they ask the court to borrow and apply different limitations periods: Fitzgerald urges a two-year period, and VEBC a four-year period.  Fitzgerald posits that unjust enrichment is the "gravamen" of VEBC's claim and that, under Texas law, the two-year limitations period that applies to such claims should be applied.  She maintains that VEBC's suit is time-barred because it filed suit in March 2006, nearly four years after the 2002 distributions that it seeks to recover.

VEBC maintains, in pertinent part, that the Texas four-year

limitations period generally applied in breach of contract or "money had and received" cases should apply.  It also contends that Fitzgerald cannot conclusively establish, under federal law, that VEBC's cause of action accrued outside the applicable limitations period.

Fitzgerald replies that the discovery rule is inapplicable to VEBC's claim and that she did not have the burden of negating it. She also maintains that VEBC has not properly raised the discovery rule or pleaded any facts that would support its application.

IV

As a threshold matter, the court addresses Fitzgerald's contention that because VEBC has not properly raised the discovery rule, she need not negate it in her motion in order to obtain judgment on the pleadings.

VEBC asserted the discovery rule in a pleading denominated "answer to counterclaims and reply to affirmative defenses."[3] Fitzgerald appears to contend that VEBC was required to plead the discovery rule in its complaint, and that its reliance on its reply is misplaced because Rule 7(a) does not require or permit a pleading that responds to an affirmative defense.  She also contends that the reply is insufficient because it does not plead

---

[3]The court notes that the correct title for a pleading that responds to a counterclaim is a "reply," not an "answer."  *See* Rule 7(a) (referring to "a reply to a counterclaim denominated as such").

facts that support application of the discovery rule.

The court rejects Fitzgerald's argument because VEBC was not required to plead the discovery rule in advance of, or in response to, her affirmative defense of limitations.  VEBC was not required in its complaint to anticipate and plead the discovery rule as a basis to avoid Fitzgerald's affirmative defense.  "[T]he law is clear that . . . the discovery rule . . . need not be specifically pleaded in federal court." *Colonial Penn Ins. Co. v. Mkt. Planners Ins. Agency, Inc.*, 1 F.3d 374, 376 (5th Cir. 1993) (per curiam) (citing *Wellborn v. Sears, Roebuck & Co.,* 970 F.2d 1420, 1425 (5th Cir. 1992)).  "Rather, '[u]nder Rule 8 of the Federal Rules of Civil Procedure, it is enough that the plaintiff plead sufficient facts to put the defense on notice of the theories on which the complaint is based.'" *Id.* (quoting *Simpson v. James*, 903 F.2d 372, 375 (5th Cir. 1990)); *see also* 5 Wright & Miller, *supra*, § 1276, at 623 (3d ed. 2004) ("On occasion, a plaintiff's complaint will contain allegations that seek to avoid or defeat a potential affirmative defense . . .; technically this is improper pleading because these allegations are not an integral part of the plaintiff's claim for relief and lie outside his or her burden of pleading.").

Nor was VEBC required to plead the discovery rule in response to Fitzgerald's answer that raised the affirmative defense of limitations.  "[A]n affirmative defense in the answer ordinarily

- 8 -

does not call for a reply inasmuch as Rule 8(d) provides that allegations in a pleading are deemed denied or avoided when no responsive pleading is required." *Id.* § 1186, at 34-35 (footnotes omitted). Therefore, because (as Fitzgerald recognizes) VEBC was not required or permitted to plead in response to her answer, the affirmative defense was deemed denied. Moreover, "if the new matter or affirmative defense is so important that it might affect the outcome of the case or broaden the issues too greatly, there may be a valid basis for seeking a court-ordered reply if that would facilitate the resolution of the dispute." *Id.* at 35. Thus in cases where a plaintiff has raised a basis to avoid the affirmative defense of limitations, courts have ordered that replies be filed. *See, e.g., United States v. Gunn*, 182 F. Supp. 623, 627 (W.D. Ark.) (court granted defendant's motion to require plaintiff to file reply to defendant's answer and affirmative defense whether plaintiff relied on fraud to avoid limitations), *aff'd*, 283 F.2d 358 (8th Cir. 1960). Although Fitzgerald could ask the court to order VEBC to file a reply that specifies its grounds for avoiding the limitations bar, she has not sought such relief in this case. Accordingly, the court holds that VEBC's reliance on the discovery rule is not procedurally defective.[4]

---

[4]The court is addressing the discovery rule that affects when a claim brought in federal court accrues under federal law. The court is not addressing the pleading obligations that VEBC would have were it asserting the Texas discovery rule in a case brought in Texas state court. *See Colonial Penn Ins. Co.*, 1 F.3d at 376

V

"Section 502(a)(3) arms plan fiduciaries with a cause of action 'to obtain . . . appropriate equitable relief' to redress any act in violation of ERISA or the terms of the plan or to enforce ERISA's provisions or the terms of the plan." *Coop. Benefit Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 330-31 (5th Cir. 2004) (citing § 502(a)(3)). Congress has not prescribed a specific limitations period for § 503(a)(3) actions. "Where federal law does not specify a limitations period, federal courts generally borrow the limitations period from the [forum] state statute which substantively most resembles the federal action." *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988) (citing *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 152 (1987)); *Berry v. Allstate Ins. Co.*, 84 Fed. Appx. 442, 444 (5th Cir. 2004) (per curiam) (ERISA § 510 action), *aff'g Berry v. Allstate Ins. Co.*, 252 F.Supp.2d 336 (E.D. Tex. 2003).

To resolve Fitzgerald's Rule 12(c) motion, the court need not decide today whether this case is controlled by a two- or four-year limitations period borrowed from Texas law. This is because the federal claim accrual rule——that is, the rule governing the date on which the applicable limitations period begins to run——is not typically borrowed from the law of the forum state. *See, e.g.,*

---

(noting that "the discovery rule must be specifically pleaded in Texas State Court to avoid the statute of limitations").

*Pietrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995) (42 U.S.C. § 1983); *Jensen*, 841 F.2d at 606 (federal securities laws); *Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987) (42 U.S.C. §§ 1981, 1983, 1985, and 1988); *La Porte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1256 (5th Cir. 1986) (Racketeer Influenced and Corrupt Organizations Act); *Severtson v. United States*, 806 F. Supp. 97, 99 (E.D. La. 1992) (Federal Tort Claims Act).  Although the Fifth Circuit has not explicitly addressed the accrual date of an ERISA § 502(a)(3) action, the court sees no reason why accrual should not be governed by federal law.  *See Berry*, 252 F.Supp.2d at 341 (holding that federal law governed accrual of claim under ERISA § 510) (citing *Jensen*, 841 F.2d at 606)), *aff'd*, 84 Fed. Appx. 442 (5th Cir. 2004).

In cases in which the issue of the date of accrual a federal cause of action has been raised, federal courts have, "in the absence of a contrary directive from Congress," applied the "discovery rule."[5]  *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) (age discrimination case) (citing, *inter alia*, *Jensen*, 841 F.2d at 606).  Under the discovery rule, a federal cause of action will be deemed to have accrued when a plaintiff discovers, or with due diligence should have discovered, the injury

---

[5]Many courts have distinguished between the "discovery" rule and the "legal injury" or "time-of-injury" rule, under which a cause of action is said to have accrued at the time the wrong or injury occurs.

that forms the basis of the action.  *See, e.g., Jensen*, 841 F.2d at 606 (addressing federal securities laws); *see also Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342 (D.C. Cir. 1991) (Ginsburg, J.) (collecting cases from eight circuits and stating that "the discovery rule is the general accrual rule in federal courts"); *Duncan v. Tex. Util. Sys. Employee Med. Plan v. Lambert*, 1997 WL 279869, at *2 (N.D. Tex. May 9, 1997) (Fitzwater, J.) (dismissing § 502(a)(1)(B) action as time-barred because reasonable jury could only find that through the exercise of reasonable care and diligence, plan would have discovered violation).

                                    VI

     Fitzgerald essentially contends that a time-of-injury rule governs the accrual of VEBC's claim.  She argues that the action accrued at the latest on the date of the third distribution, rendering this action untimely when measured by a two-year limitations period.  Fitzgerald urges the court to reject application of the discovery rule, attempts to distinguish the cases on which VEBC relies, and posits that the discovery rule is not generally applicable to federal causes of action, but is only pertinent to certain types of cases.  She appears to contend that the federal discovery rule applies only in cases where the party seeking to avail itself of the rule did not itself engage in the conduct that formed the basis of the claim, and was not knowledgeable of the predicate or underlying facts.  In other

words, she seems to suggest that the discovery rule is inapplicable because VEBC engaged in the very conduct that forms the basis of its action—i.e., the administrative error—and it was therefore knowledgeable of the predicate or underlying facts.  In support of this contention, Fitzgerald maintains that VEBC calculated the amount due to Fitzgerald based on its records, made the payments, and possessed all the information necessary for it to state a claim at the time it issued the checks.

The court cannot conclude based on the pleadings alone that a time-of-injury rule necessarily governs accrual of VEBC's § 502(a)(3) action.  This is because Fitzgerald's theory appears to rest on the assumption that VEBC necessarily possessed knowledge of all the predicate facts at the time of the error, solely by virtue of the fact that it committed the error that forms the basis of its claim.  Viewed favorably to VEBC, however, the pleadings do not establish when VEBC discovered that its calculations were mistaken, or when VEBC became aware of material facts that would have been sufficient to put it on notice of the error.  The pleadings only demonstrate that VEBC miscalculated the amount due, made three distributions to Fitzgerald, and at some point thereafter learned of its miscalculation.  The court is unwilling to hold that the mere commission of an error in computing benefits under an ERISA plan is, without more, sufficient to justify imputing knowledge to the plan administrator for purposes of § 502(a)(3) claim accrual.

*See, e.g., Connors*, 935 F.2d at 342 (citing *Cada*, 920 F.2d at 450) (holding that plaintiff may avail itself of discovery rule if injury "is not of the sort that can readily be discovered when it occurs"). The court cannot resolve this issue on the pleadings alone.

The court is unable to conclude at this stage of the litigation that a mistaken overpayment by a pension plan is inherently the type of injury that can be readily discovered when it occurs. Yet this conclusion is essentially necessary to enforce the time-bar in the context of a Rule 12(c) motion for judgment on the pleadings. Thus even assuming *arguendo* that VEBC's claim is governed by a two-year limitations period, VEBC may be able to avoid the time-bar based on the federal discovery rule. Because, under the highly deferential standard that applies, the court cannot say that Fitzgerald is entitled to judgment on the pleadings under Rule 12(c), her motion is denied.

VII

VEBC moves for partial dismissal and to re-designate Fitzgerald's counterclaims.

Fitzgerald asserts nine counterclaims against VEBC. In her response to VEBC's motion, she consents to dismissal of her eighth and ninth counterclaims, and to re-designation as affirmative defenses of her third, fourth, fifth, and sixth counterclaims. Fitzgerald opposes dismissal of her first and seventh counterclaims

and re-designation of her second counterclaim as an affirmative defense.

In addressing VEBC's Rule 12(b)(6) motion, the court applies the same highly deferential standard that it applied in deciding Fitzgeralds' Rule 12(c) motion. *See, e.g., King v. Enter. Leasing Co. of DFW*, 2006 WL 784885, at *2 (N.D. Tex. Mar. 28, 2006) (Fitzwater, J.).

## VIII

### A

Fitzgerald alleges as her first counterclaim an action under ERISA § 502(a)(3) for breach of fiduciary duty, in violation of ERISA § 404, 29 U.S.C. § 1104. She asserts that Verizon informed her in September 2001 that her position at her geographical location was going to be eliminated, and offered her the option of transferring to a different location or taking early retirement. Fitzgerald essentially alleges that VEBC misrepresented that her lump sum distribution would be approximately $700,000, and that she relied on this misrepresentation in electing to take early retirement. She avers that she would have remained employed by Verizon until she reached her normal retirement age of 62, and, but for VEBC's representation concerning her lump sum distribution, she would have earned additional compensation and benefits during that time. Fitzgerald pleads that on receipt of the third distribution, she contacted VEBC and received confirmation of the amount, and

that she relied on the confirmation in making financial decisions. She counterclaims for relief under § 502(a)(3), asserting that VEBC and other plan fiduciaries breached their fiduciary duties, ostensibly as a result of their actions in seeking to reduce her benefits and recoup the alleged overpayment. Specifically, Fitzgerald seeks

> *such appropriate equitable relief* as the Court may [d]eem just and proper *including, but not limited to*, judgment ordering the Plaintiff to rescind Defendant's election to take early retirement and reinstating her to her full retirement benefits effective as of her normal retirement date.

Ans. & Countercls. ¶ 39 (emphasis added).

VEBC moves to dismiss this counterclaim on two grounds: first, that the relief she seeks is not equitable in nature, and therefore not available under ERISA § 502(a)(3); and second, because she has not pleaded a substantive violation of ERISA. Fitzgerald specifically responds that the relief she seeks is equitable in nature, but she does not address VEBC's contentions concerning the merits of the counterclaim.

B

The court rejects VEBC's contention that this counterclaim must be dismissed on the basis that it seeks a type of relief that is not available under ERISA § 502(a)(3). In doing so, the court need not engage in a lengthy exposition of the relief available under *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S.

- 16 -

204 (2002). Fitzgerald explicitly seeks all "appropriate equitable relief," including but not limited to reinstatement to benefits. Ans. & Countercls. ¶ 39. Therefore, it is not dispositive whether Fitzgerald's additional, specific request for reinstatement to full retirement benefits is an available form of relief. *See Knudson*, 534 U.S. at 210 (noting that "equitable relief" refers to categories of relief that were typically available in equity) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)). Moreover, viewed favorably to Fitzgerald as the nonmovant, the court cannot conclude that her request for reinstatement to full retirement benefits is necessarily a request for legal, as opposed to equitable, relief. *See Verizon Employee Benefits Comm. v. Frawley*, 2006 WL 3438614, at *4-*5 (N.D. Tex. Nov. 15, 2006) (Solis, J.) (addressing Rule 12(b)(6) motion) (deeming request for reinstatement to benefits as request for equitable relief under § 502(a)(3)).

Accordingly, VEBC is not entitled on this basis to dismissal of Fitzgerald's first counterclaim.

C

VEBC also raises a substantive objection to this counterclaim. It contends that regardless whether the relief requested is appropriate under § 502(a)(3), Fitzgerald has failed to state a claim for breach of fiduciary duty. VEBC argues that she has not alleged that the misrepresentations were intentional (as opposed to

- 17 -

being simply an administrative error), and it posits that her pleadings concede that they were unintentional. Citing two Seventh Circuit cases,[6] VEBC posits that allegations of a plan fiduciary's miscalculation of benefits and resulting overstatement of benefits are legally insufficient to state a claim for breach of fiduciary duty, absent allegations of intentional misconduct. VEBC essentially argues that because Fitzgerald has not alleged intentional misconduct and appears to concede that the miscalculation was the result of an administrative error, she has failed to plead a breach of a fiduciary duty.

The court disagrees. VEBC's reliance on the two Seventh Circuit decisions is misplaced. Even if controlling, the cases are distinguishable because both held that the claimant's *lack of evidence* of an intentional misrepresentation was fatal at the summary judgment stage. Neither case addressed the sufficiency of *the pleadings*. Thus even if the court assumes that an ERISA breach of fiduciary claim requires proof of intent to deceive, Fitzgerald's counterclaim, viewed favorably, is not inconsistent with proving intent to deceive. Moreover, applying the highly deferential standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), the court is unable to conclude that Fitzgerald has conceded in her pleadings that VEBC's actions were unintentional.

---

[6]*Brosted v. UNUM Life Ins. Co. of Am.*, 421 F.3d 459 (7th Cir. 2005), and *Vallone v. CNA Fin. Corp.*, 375 F.3d 623 (7th Cir. 2004).

- 18 -

Fitzgerald denies the allegations of VEBC's complaint that characterize the alleged overpayments as resulting from an "administrative error." Ans. & Countercls. ¶¶ 6-9. Nor has VEBC adequately established that, in order to state a breach of fiduciary duty claim under ERISA, Fitzgerald is required to plead affirmatively and specifically that VEBC acted with intent to deceive.

The court therefore denies VEBC's motion to dismiss Fitzgerald's first counterclaim.

IX

A

In her seventh counterclaim, Fitzgerald asserts that VEBC is liable for wrongfully seeking to reduce her benefits, in violation of § 204(g)(1), 29 U.S.C. § 1054(g)(1), ERISA's "anti-cutback" provision. Section 204(g)(1) provides, in relevant part, that an accrued benefit of a plan participant may not be decreased by a plan amendment. *Bodine v. Employers Cas. Co.*, 352 F.3d 245, 252 (5th Cir. 2003). Fitzgerald alleges that VEBC's actions (presumably referring to its efforts in seeking to recover the alleged overpayment) violated § 204(g)(1) and constituted a breach of fiduciary duty under § 404.[7]

---

[7]The court rejects VEBC's contention that the seventh counterclaim seeks relief at law that is not available under ERISA, because it does not necessarily seek relief at law. *See* Ans. & Countercls. ¶ 64.

VEBC moves to dismiss this counterclaim, contending that the absence of any allegation that VEBC amended the Plan (much less did so to reduce Fitzgerald's accrued benefits) is fatal to Fitzgerald's claim. VEBC essentially posits that § 204(g) applies only to amendments, and that an amendment must be a written modification completed pursuant to the Plan's amendment procedure and by its amending authority. It contends that because Fitzgerald does not allege any amendment to the Plan, she has failed to state a claim for a violation of § 204(g)(1).

Fitzgerald responds that she has pleaded that VEBC amended the Plan to reduce benefits. She cites ¶ 41 of her counterclaim, wherein she alleges that she received a communication from VEBC informing her that it would suspend her retiree medical subsidy effective December 1, 2005, and stating that the amount of the subsidy would be applied to the alleged overpayment, and would continue until the overpayment was recouped. Fitzgerald also alleges that in the year before VEBC filed suit, it amended the Plan for Group Insurance, effectively permitting it to unilaterally terminate health insurance premium payments and apply those funds to any alleged overpayment.[8] Fitzgerald maintains this was a Plan-wide amendment that is subject to § 204(g). VEBC replies that ¶ 41 of Fitzgerald's counterclaim does not plead an amendment to the

_____

[8]Fitzgerald attaches a November 2, 2005 letter from O'Neel in support of these allegations. The court need not rely on attachments to pleadings in deciding the motion.

- 20 -

Plan, and it objects to her reliance on materials outside the pleadings.

B

In her seventh counterclaim, Fitzgerald alleges that, on November 2, 2005, she

> received a communication from [VEBC] informing
> her that, in retaliation for her refusal to
> remit the alleged overpayment, [VEBC] would
> suspend her retiree medical subsidy effective
> December 1, 2005, that the amount of the
> subsidy would be applied to the alleged
> overpayment which [VEBC] is seeking to recover
> and that the suspension would continue until
> the amount [VEBC] was seeking was recouped.

Ans. & Countercls. ¶ 41 (incorporated by reference at ¶ 62). In her opposition brief, Fitzgerald alleges that this suspension of benefits occurred pursuant to an amendment to the Plan effective December 21, 2004. In support of this contention, Fitzgerald relies on a letter from O'Neel that is attached to her opposition brief. She avers that, pursuant to this amendment, if VEBC maintains that it made an overpayment to any Plan participant, it could unilaterally terminate health insurance premium payments pursuant to the Plan and apply the money to the alleged overpayment. Fitzgerald avers that this was a Plan-wide amendment that is subject to the ERISA's anti-cutback provisions.

VEBC objects to Fitzgerald's reliance on the O'Neel letter because it is outside the pleadings. It opposes converting the motion into a motion for summary judgment to the extent that such

conversion would preclude it from later seeking summary judgment. VEBC also argues that the attached letter, even if considered, does not refer to the Plan, but instead relates to an employee welfare benefit plan that is not subject to the § 204(g) anti-cutback provision.  It concludes that even accepting the letter as true, it does not refer to, or purport to amend, the Plan.

The court need not rely on materials outside the pleadings to hold that Fitzgerald's seventh counterclaim survives dismissal at the Rule 12(b)(6) stage.  Assuming *arguendo* that to state a claim under § 204(g), Fitzgerald must allege (as VEBC contends) a written amendment made pursuant to the Plan and a reduction of accrued benefits under the Plan, the seventh counterclaim is at least minimally sufficient to withstand dismissal.  Fitzgerald may be able to prove facts, consistent with the above-referenced allegations, that support the existence of a written amendment reducing the amount of accrued benefits under the Plan.

The court therefore denies VEBC's motion to dismiss Fitzgerald's seventh counterclaim.[9]

---

[9]The court suggests no view concerning whether this counterclaim would survive summary judgment, when the court will not simply be assessing the adequacy of Fitzgerald's allegations but will also be analyzing whether a reasonable jury could find in her favor.

X

A

VEBC also moves the court under Rule 8(c) to re-designate part of Fitzgerald's second counterclaim as an affirmative defense. Rule 8(c) provides:

> When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

*See, e.g., Home Ins. Co. v. Matthews*, 998 F.2d 305, 308-310 (5th Cir. 1993) (holding that plaintiff satisfied Rule 8(c) by pleading pertinent facts for waiver despite labeling defense as estoppel).

Fitzgerald alleges in her second counterclaim that VEBC wrongfully suspended her retiree medical subsidy so as to apply those funds to recoup the alleged overpayment. She seeks compensation for all benefits paid by her during the period of suspension, as well as declaratory and injunctive relief reinstating her retiree medical subsidy. Fitzgerald alleges that she is entitled to credit against any judgment for the overpayment for any and all amounts that VEBC recoups by virtue of its alleged suspension of her retiree medical subsidy.

VEBC argues that Fitzgerald's claim for an offset should not be designated as a counterclaim because it does not seek affirmative relief and is more properly described as seeking recoupment. VEBC also implies that any counterclaim would be

- 23 -

essentially for legal, rather than equitable, relief, and thus would be barred under *Knudson*, 534 U.S. 204.[10]

Fitzgerald responds that her second counterclaim should not be re-designated because it in fact seeks two independent forms of relief: compensation for medical insurance premiums and equitable relief that would compel VEBC to resume payment of the premiums; and, if she is required to repay the alleged overpayment, and it is determined that VEBC had a right to suspend her benefits, credit against any judgment for the amount already recouped. Fitzgerald does not respond, however, to VEBC's contention that her claim for an offset is in the nature of recoupment and should be re-designated as an affirmative defense rather than as a counterclaim.

VEBC replies that any request for economic damages is barred, and it argues that Fitzgerald has failed to plead a basis for injunctive relief because she has failed to allege irreparable harm or likelihood of success on the merits.

B

VEBC does not move to dismiss Fitzgerald's second counterclaim to the extent she seeks compensation for medical insurance premiums and injunctive and declaratory relief, and the court will not consider arguments for dismissal raised by way of VEBC's reply brief. *See, e.g., Senior Unsecured Creditors' Comm. of First*

_____

[10]VEBC does not move to dismiss Fitzgerald's second counterclaim; instead, it seeks to re-designate it as an affirmative defense.

*RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.).   The court must still consider, however, VEBC's contention that, under Rule 8(c), the counterclaim for an offset should be re-designated as an affirmative defense.

Fitzgerald essentially pleads that if VEBC is permitted to recover the overpayment, the recovery should be offset in the amount that VEBC has already recouped through its suspension of her retiree medical subsidy.   Although Fitzgerald's putative counterclaim for an offset appears to be more in the nature of a defensive pleading, the court declines at this time to re-designate it as an affirmative defense.[11]   Instead, at such time as consideration of the merits of the putative counterclaim becomes relevant, the court will address whether Rule 8(c) requires re-designation.

\*   \*   \*

Accordingly, except for counterclaims that Fitzgerald concedes should be re-designated or dismissed, the court denies VEBC's October 31, 2006 motion to dismiss and to re-designate counterclaims.  Fitzgerald's November 29, 2006 motion for judgment

---

[11]As the court has already noted, Fitzgerald's second counterclaim seeks affirmative relief in the form of monetary compensation and declaratory and injunctive relief.  These claims are plainly not in the nature of a defensive pleading, and the court will not re-designate them as such.

on the pleadings is denied.

**SO ORDERED.**

July 12, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE